JENNER & BLOCK LLP
Rick Richmond (Cal. Bar No. 194962)
rrichmond@jenner.com
Brent Caslin (Cal. Bar No. 198682)
bcaslin@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone:   (213) 239-5100
Facsimile :   (213) 239-5199

MELISSA A. COX (*pro hac vice*)
melissacox@jenner.com
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone:   (202) 639-6000
Facsimile:   (202) 639-6066

Attorneys for Defendant and Counterclaim Plaintiff National Air Cargo, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GLOBAL BTG LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL AIR CARGO, INC.,<br><br>    Defendant-Counterclaim Plaintiff,<br><br>    v.<br><br>GLOBAL BTG LLC, JACOB HODGES and DOES 1-5,<br><br>    Counterclaim Defendants. | Case No.  CV 11-01657 MMM (JCGx)<br><br>The Honorable Margaret M. Morrow<br><br>**NATIONAL AIR CARGO, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**<br><br>[Notice of Motion, Memorandum of Points & Authorities, Declaration of Melissa Cox, Declaration of Glen Joerger and Proposed Order filed concurrently herewith]<br><br>Discovery Cutoff:   June 5, 2012<br>Pretrial Conference: Nov. 13, 2012<br>Trial Date:          Dec. 4, 2012<br><br>Hearing Date:    Dec. 10, 2012<br>Hearing Time:    10:00 a.m.<br>Courtroom:       780 |

Pursuant to the Federal Rules of Civil Procedure and the Central District of California Local Rules, for purposes of summary judgment, defendant National Air Cargo, Inc. ("National") contends that the following facts are undisputed.

### **Background Facts.**

| No. | Undisputed Fact | Support |
|---|---|---|
| 1. | National is a global freight services company. | Cox Decl. Ex. 1 at 19[1]:9-12 (Alf Dep. Tr.). |
| 2. | A significant portion of National's business is with the United States Department of Defense's Civil Reserve Air Fleet ("CRAF") program under which the Department of Defense contracts with civilian air carriers to provide air cargo support. | Cox Decl. Ex. 2 at 27 (McFarlane Expert Report). |
| 3. | In the spring and summer of 2010, National had an opportunity to expand its aircraft fleet and take advantage of incentives offered by the Department of Defense's Civil Reserve Air Fleet program for the use of modern, fuel-efficient aircraft. | Cox Decl. Ex. 3 at 92:3-93:17 (Joerger Dep. Tr.); *see also* Cox Decl. Ex. 2 at 27-28 (McFarlane Expert Report). |
| 4. | In May 2010, National reached a preliminary agreement to purchase three Société Air France ("Air France") Boeing 747 aircraft from a special purpose entity affiliated with Anchorage Capital for $120.5 million. | Cox Decl. Ex. 4 (Letter of Intent); *see also* Cox Decl. Ex. 5 (Purchase Agreement). |

---

[1] All citations to exhibit page numbers are to numbers added by National pursuant to Local Rule 11-5.2.

| No. | Undisputed Fact | Support |
|---|---|---|
| 5. | In May 2010, National signed a purchase agreement with Japan Airlines ("JAL") to buy five Boeing 747 aircraft for $192.5 million. | Cox Decl. Ex. 6 (Japan Airlines Purchase Agreement). |
| 6. | National required financing to fund the purchase price of the eight Air France and JAL aircraft. | *See* Cox Decl. Ex. 1 at 16:8-12 (Alf Dep. Tr.). |
| 7. | The purchase of the Air France aircraft were scheduled to commence on June 15, 2010. | Cox Decl. Ex. 4 at 127 (Air France Letter of Intent ); *see also* Cox Decl. Ex. 1 at 11:19-12:15 (Alf Dep. Tr.). |
| 8. | The JAL aircraft were being sold in the midst of Japanese bankruptcy proceedings, which required JAL's bankruptcy trustee to operate under tight deadlines. | Cox Decl. Ex. 1 at 13:4-15 and 18:22-20:13 (Alf Dep. Tr.). |
| 9. | JAL repeatedly demanded that National obtain a firm commitment letter from a qualified lending institution for the balance needed to purchase its five 747s. | Cox Decl. Ex. 7 (6/17/2010 email); Cox Decl. Ex. 8 (6/25/210 email). |
| 10. | National engaged Donald Stukes, Senior Managing Director of ASI Advisors, as an independent contractor to help National find financing for the purchase of the eight Air France and Japan Airlines aircraft. | Cox Decl. Ex 1 at 10:3-14 (Alf Dep. Tr.); Cox Decl. Ex. 3 at 94:11-95:1 (Joerger Dep. Tr.). |
| 11. | Donald Stukes contacted Goldman Sachs Group, Citibank, Deutsche Bank AG, and others as possible sources of funding for the purchase of the eight Air France and JAL aircraft. | Cox Decl. Ex. 9 (6/14/2010 email); Cox Decl. Ex. 10 (6/17/2010 email). |

| No. | Undisputed Fact | Support |
|---|---|---|
| 12. | Donald Stukes contacted Jacob Hodges as a possible funding source and told him that "time is of the essence" and he "must act fast." | Cox. Decl. Ex. 11 (6/19/2010 email). |
| 13. | National was told that Mr. Hodges, with his purported connections, would be able to put together a financing deal quickly and on good terms for National. | Cox Decl. Ex. 3 at 98:11-22 (Joerger Dep. Tr.). |
| 14. | On May 27, 2010, Jacob Hodges sent an email to Clive Bowen with the signature line:<br>"Jacob Hodges<br>Pearl Aircraft Corporation Ltd.<br>Los Angeles, CA<br>Mobile + 1 805-405-9211<br>Email: Jacob@pearlaircraft.com." | Cox Decl. Ex. 12 (5/27/2010 email). |
| 15. | Jacob Hodges sent an email on May 13, 2010 in which he claimed to be a "managing director" of Pearl Aircraft Corporation. | Cox Decl. Ex. 13 at 415 (6/7/2010 email). |
| 16. | National reviewed the website for Pearl Aircraft Corporation, which showed that Pearl Aircraft was an established company with substantial capital for airline financing projects. | Cox Decl. Ex. 3 at 99:12-100:10 (Joerger Dep. Tr); *see also* Cox Decl. Ex. 14 (Pearl website, 7/24/2010). |
| 17. | Donald Stukes added "Pearl — meaning Jacob Hodges — to National's internal list of potential investors. | Cox Decl. Ex. 15 (6/21/2010 email); *see also* Cox Decl. Ex. 16 at 429:23-430:15 (Stukes Dep. Tr.). |

3
National's Statement of Uncontroverted Facts and Conclusions of Law

| No. | Undisputed Fact | Support |
|---|---|---|
| 18. | National communicated to Mr. Hodges that JAL's bankruptcy trustee was applying pressure to finalize the deal quickly. | Cox Decl. Ex. 3 at 107:2-108:11(Joerger Dep. Tr.); Cox Decl. Ex. 17 at 442:2-7 (Hodges Dep. Tr.). |
| 19. | National and JAL were scheduled to meet in Japan during the week of July 26, 2010. | Cox. Decl. Ex. 3 at 101:15-102:1 (Joerger Dep. Tr.). |
| 20. | National needed to have in hand a firm commitment letter from a qualified lending institution before its meeting with JAL scheduled for the week of July 26, 2010. | Cox Decl. Ex. 1 at 17:10-20 (Alf. Dep. Tr.); Cox Decl. Ex. 3 at 101:15-102:1 (Joerger Dep. Tr.). |
| 21. | JAL was going to terminate the deal with National if National could not provide the required commitment letter at the meeting scheduled for the July 26, 2010. | Cox Decl. Ex. 1 at 17:10-20 (Alf. Dep. Tr.); Cox Decl. Ex. 3 at 101:15-102:1 (Joerger Dep. Tr.). |
| 22. | Jacob Hodges claimed that he had "soft" commitments and that quality financial institutions were "in committee" to finalize their funding proposals for National. | Cox Decl. Ex. 3 at 107:22-108:12 (Joerger Dep. Tr.). |
| 23. | Jacob Hodges asked National to sign a letter of intent to show that National was serious about the purchase of the eight JAL and Air France aircraft. | Cox Decl. Ex. 3 at 109:2-13 (Joerger Dep. Tr.). |
| 24. | Jacob Hodges told National that, after the proposed Letter of Intent was signed, he would be able to provide the letter demanded by the JAL trustee. | Cox Decl. Ex. 18 (7/15/2010 email). |

4
National's Statement of Uncontroverted Facts and Conclusions of Law

| No. | Undisputed Fact | Support |
|---|---|---|
| 25. | Jacob Hodges represented that after the Letter of Intent was signed, he would be able to formalize the financing he had already arranged. | Cox Decl. Ex. 3 at 105:15-106:1; 109:2-13 (Joerger Dep. Tr.). |
| 26. | On July 7, 2010, National was told that Mr. Hodges "had approval to do the deal" and was sent a draft letter of intent from "Pearl." | Cox Decl. Ex. 19 (7/7/2010 email with attachment). |
| 27. | The July 7, 2010 draft of the Letter of Intent had a placeholder for an entity "xxx Aircraft, Inc., a SPE, an affiliate or assignee," through which the financing would be arranged. | Cox Decl. Ex. 19 at 450 (7/7/2010 email with attachment). |
| 28. | National believed that the placeholder was either: (a) Pearl Aircraft subsidiaries; or (b) special purpose entities set up by other sophisticated financing firms. | Cox Decl. Ex 3 at 96:15-97:6; 111:12-18 (Joerger Dep. Tr.). |
| 29. | On July 15, 2010, Donald Stukes informed National that Jacob Hodges would be doing the deal through an entity called "Global BTG" ("Global") with another entity called "Green Rock." | Cox Decl. Ex. 20 (7/15/2010 email with attachment). |
| 30. | National informed Global that National would "take its foot off the gas" in its negotiations with other financing institutions and give Jacob Hodges until July 22, 2010 to obtain a firm commitment for financing. | Cox Decl. Ex. 1 at 14:13-16:16 (Alf Dep. Tr. ); Cox Decl. Ex. 3 at 122:19-123:14 (Joerger Dep. Tr.). |

| No. | Undisputed Fact | Support |
|---|---|---|
| 31. | The Letter of Intent was fully executed on July 18, 2010. | Cox Decl. Ex. 21 (executed copy of the Letter of Intent); *see also* Cox Decl. Ex. 22 (legible version of the same); Joerger Decl. ¶ 4. |
| 32. | Jacob Hodges signed the Letter of Intent on behalf of "Global BTG, Inc." | Cox Decl. Ex. 21 (executed copy of the Letter of Intent). |
| 33. | The Letter of Intent "outlines the basic commercial terms" for National to lease "up to eight" aircraft. | Cox Decl. Ex. 22 at 474 (Letter of Intent). |
| 34. | On July 22, 2010, Jacob Hodges sent National a "Memorandum of Understanding." | Cox Decl. Ex. 23 (7/22/2010 email with attachment). |
| 35. | The July 22, 2010 "Memorandum of Understanding" drafted by Jacob Hodges was a slightly revised version of the July 18, 2010 Letter of Intent between the parties. | *Compare* Cox Decl. Ex. 22 (Letter of Intent) and Cox Decl. Ex. 23 (Memorandum of Understanding). |
| 36. | The July 22, 2010 "Memorandum of Understanding" drafted by Jacob Hodges refers to itself as a "Letter of Intent." | Cox Decl. Ex. 23 at 490. |
| 37. | The July 22, 2010 "Memorandum of Understanding" drafted by Jacob Hodges was insufficient to satisfy the demands of the JAL bankruptcy trustee. | Cox Decl. Ex. 3 at 120:14-121:20 (Joerger Dep. Tr.); *see also* Cox Decl. Ex. 24 (7/23/2010 email). |
| 38. | On July 23, 2010, National terminated its relationship with Global. | Cox Decl. Ex. 24 (7/23/2010 email). |

| No. | Undisputed Fact | Support |
|---|---|---|
| 39. | Ultimately National was unable to complete the purchase of the JAL aircraft and had to forfeit $100,000 of its deposit to JAL. | Cox Decl. Ex. 1 at 21:13-20 (Alf Dep. Tr.); Cox Decl. Ex. 25 (8/10/2010 letter). |
| 40. | National was able to secure financing from Goldman Sachs for the three Air France aircraft. | Cox Decl. Ex. 3 at 119:16-22 (Joerger Dep. Tr.). |
| 41. | After his termination, Jacob Hodges began claiming that the Letter of Intent was an exclusive operating agreement. | Cox Decl. Ex. 26 (7/24/2010 email); Cox Decl. Ex. 27 (7/25/2010 email). |
| 42. | On February 11, 2011, Global filed this lawsuit against National. | *See* ECF No. 1. |

## Global BTG Does Not Qualify for any of the Equitable Exceptions that Would Recognize its Capacity to Enforce the Letter of Intent.

| No. | Undisputed Fact | Support |
|---|---|---|
| 43. | Jacob Hodges signed the Letter of Intent as the "Managing Director" of "Global BTG, Inc." | Cox Decl. Ex 21 at 473 (Letter of Intent). |
| 44. | Jacob Hodges admits that "Global BTG, Inc." has never existed as a corporation. | Cox Decl. Ex. 28 at 506:26-27 (Hodges' Responses to National's Second Set of Requests for Admission). |
| 45. | Global BTG was organized as a Nevada limited liability company on July 20, 2010. | Cox Decl. Ex. 29 (Articles of Organization). |

| No. | Undisputed Fact | Support |
| --- | --- | --- |
| 46. | On July 8, 2010, Jacob Hodges contacted his attorney, Stuart Warren, to assist him with organizing "GLOBAL BTG, LLC." | Cox Decl. Ex. 30 (7/8/2010 email). |
| 47. | On July 8, 2010, Jacob Hodges instructed his counsel to reserve the name "GLOBAL BTG, LLC." | Cox Decl. Ex. 30 (7/8/2010 email). |
| 48. | On July 10, 2010, at the suggestion of his counsel, Jacob Hodges began searching for someone to serve as Global BTG's registered agent in Nevada. | Cox Decl. Ex. 31 (7/10/2010 email). |
| 49. | Global and its counsel knew the legal requirements for organizing a LLC well before July 18, 2010. | Cox Decl. Ex. 32 (7/9/2010 email); Cox Decl. Ex. 33 (7/12/2010 email). |
| 50. | Global did not attempt to organize legally until after July 18, 2010. | Cox Decl. Ex. 34 (7/19/2010 email); Cox Decl. Ex. 35 (7/19/2010 email); Cox Decl. Ex. 36 (7/20/2010 email); Cox Decl. Ex. 37 (8/9/2010 List of Managing Members). |
| 51. | National did not know that Global BTG was not legally organized at the time the Letter of Intent was signed. | Cox Decl. Ex. 38 at 551:14-552:6 (National's Supplemental Responses to First Set of Interrogatories from Jacob Hodges); Joerger Decl. ¶ 6. |

| No. | Undisputed Fact | Support |
|---|---|---|
| 52. | Neither Jacob Hodges nor anyone else told National that Global BTG was not legally organized, either as a corporation or as a LLC. | Cox Decl. Ex. 17 at 434:23-435:1 (Hodges Dep. Tr.); Cox Decl. Ex. 39 at 571:12-14 (Global's Responses to National's First Set of Interrogatories); see also Joerger Decl. ¶ 5. |
| 53. | Jacob Hodges admits that "Goldman Sachs doesn't need Global to prime the market to raise financing." | Cox Decl. Ex. 17 at 443:18-21 (Hodges Dep. Tr.). |

**National Never Committed to an Operating Lease.**

| No. | Undisputed Fact | Support |
|---|---|---|
| 54. | The "Governing Law" provision in the Letter of Intent states that "[t]his Letter of Intent and the lease documentation will be governed by the laws of the State of New York." | Cox Decl. Ex. 22 at 479 (Letter of Intent). |
| 55. | Global claims that Global's alleged damages would increase exponentially, if National were required to accept just a single operating lease. | Cox Decl. Ex. 40 at 607 (Cox Expert Report). |
| 56. | The Letter of Intent states: "At least 60 days prior to the commencement of the Lease Term for each Aircraft, Lessee [i.e.,National] will have the option to select an operating lease structure or a finance lease structure." | Cox Decl. Ex. 22 at 475 (Letter of Intent). |

| No. | Undisputed Fact | Support |
|---|---|---|
| 57. | The Letter of Intent nowhere states that "at least one aircraft" will be subject to an operating lease. | Cox Decl. Ex. 22, passim (Letter of Intent). |
| 58. | On July 16, 2010, Donald Stukes wrote to Jacob Hodges: "They [National] have no interest in any of the operating leases. They want all finance leases. (This should be of no surprise.)" | Cox Decl. Ex. 41 (7/16/2010 email). |
| 59. | Early in the morning on July 17, 2010, Donald Stukes wrote to Jacob Hodges: "Before I send to NAC [National] perhaps we should talk. They made it clear they did not want an op[erating lease] on the phone and your team was fine with arranging cap leases." | Cox Decl. Ex. 42 (7/17/2010 email) |
| 60. | In the evening of July 17, 2010, Jacob Hodges sent Donald Stukes a draft of the Letter with language stating that National "agrees to lease at a minimum of one of the above referenced Aircraft from Lessor as an Operating Lease." | Cox Decl. Ex. 43 at 623 (7/17/2010 email with attachment). |
| 61. | On the night of July 17, 2010, Jacob Hodges sent Donald Stukes a draft of the Letter that does not include the language committing National to at least one operating lease. | Cox Decl. Ex. 44 (7/17/2010 email with attachment). |

| No. | Undisputed Fact | Support |
|---|---|---|
| 62. | Jacob Hodges admits that no one from National ever promised him or Global that National would agree to at least one operating lease. | Cox Decl. Ex. 17 at 441:5-8 (Hodges Dep. Tr.). |

## National Did Not Give Global any Rights of Exclusivity.

| No. | Undisputed Fact | Support |
|---|---|---|
| 63. | The Letter of Intent does not contain any language expressly providing Global with any form of exclusivity rights. | Cox. Decl. Ex. 22, passim (Letter of Intent); see also Cox Decl. Ex. 17 at 437:15-438:1 (Hodges Dep. Tr.). |
| 64. | The Letter of Intent does not state that National was prohibited from dealing with financing sources aside from Global, or that National was precluded from terminating its relationship with Global. | Cox Decl. Ex. 22, passim (Letter of Intent) |
| 65. | The Letter of Intent only mentions a single deadline: "Global will use its best efforts to deliver up to National on or before Thursday July 22, 2010 an MOU from a qualified lender to provide capital to purchase Aircraft under a loan/and or finance lease." | Cox Decl. Ex. 22 at 479 (Letter of Intent). |
| 66. | Jacob Hodges drafted the Letter of Intent. | Cox Decl. Ex. 19 (initial draft); Cox Decl. Ex. 20 (intermediate draft); Cox Decl. Ex. 45 (final version to be signed). |
| 67. | Jacob Hodges admits that National never promise him or Global that National would give Global exclusivity. | Cox Decl. Ex. 17 at 440:16-25 (Hodges Dep. Tr.). |

| No. | Undisputed Fact | Support |
|---|---|---|
| 68. | National informed Donald Stukes that National could not agree to an exclusive arrangement because, given the time pressures, National needed the flexibility to pursue all possible sources of financing. | Cox Decl. Ex. 46 (7/16/2010 email); Cox Decl. Ex. 47 (7/17/2010 email). |
| 69. | Nationally initially proposed language in the Letter of Intent clarifying that National was not required to seek financing through Global on an exclusive basis. | Cox Decl. Ex. 48 at 671 ("[I]f Lessee receives a firm commitment from another financial institution then the number of aircraft may be reduced."); see also Cox Decl. Ex. 3 at 109:14-110:21; 112:13-113:4 (Joerger Dep. Tr.); Cox Decl. Ex. 17 at 436:20-437:14 (Hodges Dep. Tr.). |
| 70. | National and Global eventually removed language from the Letter of Intent that expressly noted that the document did not require National to seek financing through Global on an exclusive basis. | Cox Decl. Ex. 3 at 114:10-116:1 (Joerger Dep. Tr.); Cox Decl. Ex. 17 at 436:20-437:14 (Hodges Dep. Tr.). |
| 71. | LEFT INTENTIONALLY BLANK | LEFT INTENTIONALLY BLANK |

## The Letter of Intent Is Void.

| No. | Undisputed Fact | Support |
|---|---|---|
| 72. | The Letter of Intent states: "Lessor understands that Lessee desires to have a buy out provision at 12 and 24 months and Lessor will on a best efforts basis seek that option from its lenders." | Cox Decl. Ex. 22 at 475 (Letter of Intent). |

| No. | Undisputed Fact | Support |
|---|---|---|
| 73. | The Letter of Intent states: "Exact terms and conditions [regarding maintenance reserves] will be included in the term sheet," which was never created. | Cox Decl. Ex. 22 at 477 (Letter of Intent).. |
| 74. | The Letter of Intent states: ""The Lease will contain other Return Conditions customary for such transactions.  Exact terms and conditions will be included in the term sheet." | Cox Decl. Ex. 22 at 479(Letter of Intent);  see also id. at 477 ("The Lease will contain other Return Conditions customary for such transactions."). |
| 75. | The Letter of Intent states: "[T]he Lease Agreement will contain terms, conditions, and other provisions which are usual in such agreements for commercial aircraft used in international operations, including insurance and indemnification provisions and waivers of representations and warranties with respect to the condition of the Aircraft." | Cox Decl. Ex. 22 at 479 (Letter of Intent). |
| 76. | The Letter of Intent states: "The terms of the finance lease and the operating lease will be negotiated in good faith by the parties as soon as practicable after execution of this LOI." | Cox Decl. Ex. 22 at 479 (Letter of Intent). |
| 77. | Among the "Conditions Precedent" listed in the Letter of Intent was "satisfactory lease or financing documentation" to be negotiated and drafted by the parties. | Cox Decl. Ex. 22 at 480 (Letter of Intent). |

| No. | Undisputed Fact | Support |
|---|---|---|
| 78. | National's understanding was that the Letter of Intent committed National to fund the acquisition of aircraft through Global only if certain conditions specified in the document were met, including the requirement that Global provide a firm financing commitment from a qualified lender by July 22, 2010. | Cox Decl. Ex. 3 at 117:8-118:3 (Joerger Dep. Tr); Joerger Decl. ¶ 8. |
| 79. | Global maintains that the Letter is a "binding agreement" for "the sale and leaseback of the eight aircraft with Global, and only with Global. National was not free to sell the aircraft to a third party. . . . This is the only possible interpretation of the Letter of Intent as National cannot sell the same aircraft to two different purchasers." | Cox Decl. Ex. 49 (9/4/2012 letter). |
| 80. | Jacob Hodges testified that the Letter of Intent had no "deadline to exclusivity" because it is a "buy-sell agreement." | Cox Decl. Ex. 50 at 682:1-9 (Hodges' Response to National Air Cargo, Inc.'s Second Set of Interrogatories). |

DATED:  September 14, 2012            JENNER & BLOCK LLP

                                          /s/ Brent Caslin _____
                                         Brent Caslin

                                         Attorneys for National Air Cargo, Inc.

National's Statement of Uncontroverted Facts and Conclusions of Law