Donald J. Kula, Bar No. 144342
Nathan M. Smith, Bar No. 255212
Vilma Palma-Solana, Bar No. 267992
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Plaintiff Global BTG LLC, a Nevada Limited Liability Company doing business in California, and Counterclaim-Defendant Jacob Hodges

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL BTG LLC,<br><br>Plaintiff,<br><br>v.<br><br>NAC AIR CARGO, INC.,<br><br>Defendant-Counterclaim Plaintiff,<br><br>v.<br><br>GLOBAL BTG LLC, JACOB HODGES and DOES 1-5,<br><br>Counterclaim Defendants. | Case No. 2:11-cv-01657-MMM-JCGx<br><br>**DECLARATION OF JACOB HODGES IN SUPPORT OF GLOBAL BTG LLC'S AND JACOB HODGES'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hon. Margaret M. Morrow<br>Discovery Cutoff: June 5, 2012<br>Pretrial Conference: Nov. 13, 2012<br>Trial Date: Dec. 4, 2012<br><br>Hearing Date: December 10, 2012<br>Hearing Time: 10:00 am<br>Hearing Location: Courtroom 780 |

LEGAL24666093.1

Hodges Decl. ISO Global's and Hodges's
Motion for Partial Summary Judgment

1.     My name is Jacob Hodges. I am the sole member of Global BTG LLC ("Global") the plaintiff in this lawsuit against National Air Cargo, Inc. ("NAC"). I have first hand knowledge of the matters referred to in this declaration unless otherwise indicated.

2.     In December 2004, I began a six year tenure with BCI Aircraft Leasing ("BCI"), a relatively small aircraft lessor. During my tenure BCI grew from a company with $384 million in aircraft assets to over $1.1 billion in aircraft assets under operating lease. BCI bought over 118 aircraft, and while employed at BCI I secured financing for most of those purchases and was involved in every one.

### Formation of Global BTG LLC

3.     I contemplated forming Global BTG as a Nevada limited liability company as far back as December 11, 2008, when Stuart Warren reserved the name Global BTG LLC with the Nevada Secretary of State.

4.     When I left BCI in May 2010 I took affirmative steps to form my own firm, Global BTG LLC.

5.     On May 9, 2010, I purchased and registered the domain name www.Globalbtg.com on behalf of Global.

6.     On July 8, 2010, I instructed my counsel, Stuart Warren to reserve the name Global BTG LLC and prepare organizational papers for registering Global BTG as a Nevada limited liability company.

7.     On July 12, 2010, I also sent an email to a relative asking him to serve as Global's Nevada agent for service of process.

8.     Global's articles of organization were filed with the Nevada Secretary of State on July 20, 2010.

### The Agreement with NAC

9.     In the summer of 2010, Donald Stukes contacted me by email to explore the possibility of entering into an agreement with NAC for the purchase and leaseback or to enter into operating leases, with NAC as the lessee, for up to eight

747 aircraft. My team and I have experience leasing, managing, and operating 747 aircraft.

10. I expressed interest and began, along with certain members of my team, negotiations with NAC's principals and their agent, Stukes. I acted as the sole member of Global BTG LLC and always intended that Global BTG LLC be bound and benefited by any agreement reached with NAC.

11. During the negotiations neither NAC nor NAC's agent Don Stukes ever asked me or anyone associated with Global any questions about Global's organizational status. Neither Stukes nor anyone from NAC ever showed any interest in Global's organizational status.

12. During the negotiations I communicated to Stukes and NAC that Global would not enter into an agreement unless NAC agreed that at least one of the eight aircraft be under an operating lease, with NAC as the lessee, as was originally presented by Stukes. Neither Stukes nor NAC told me that NAC would not commit to at least one operating lease.

13. On July 17, 2010, the last day of negotiations before we executed a binding Agreement, NAC requested that the Agreement include language that Global would use its best efforts to deliver a memorandum of understanding ("MOU") from a qualified lender by July 22, 2010. I, on behalf of Global, informed NAC that it would be virtually impossible to obtain the requested MOU in that time. NAC nonetheless desired to add this language so that it could demonstrate progress to Japan Airlines, the airline from whom NAC was obtaining five of the eight aircraft. NAC said that it was committed to purchase the aircraft from Japan Airlines and Global received assurances throughout that the JAL aircraft sale was not at risk.

14. At no point did NAC state or suggest that NAC would seek to terminate the Agreement if, despite using its best efforts, Global was unable to

deliver up an MOU from a qualified lender on or before Thursday July 22, 2010.

15. On July 18, 2010, I received an executed copy of the Agreement from NAC for the purchase and leaseback of up the eight aircraft. I then signed the Agreement and transmitted it to NAC. When signing, in my capacity as the sole member of Global BTG, LLC, I did not notice that the signature line read Global BTG, Inc. This was a typographical mistake as I intended Global BTG LLC to be bound, to assume all obligations and to receive all benefits from the Agreement.

16. Before the Agreement was finalized, Global conducted due diligence on the aircraft's technical condition, prepared marketing materials, including credit write-ups and requests for proposals, and was soliciting general lender interest to determine what pricing was achievable.

17. Upon finalizing the Agreement, Global's effort and time commitment to the deal multiplied. In the week following the execution of the Agreement, I and others in my team, on behalf of Global, contacted and distributed requests for proposals, on behalf of Global BTG LLC, to financing sources from around the world.

18. During the negotiations I asked NAC and Stukes how many lenders had been contacted for the same deal and I was informed that the prior contacts were limited to two or three lenders. Since filing this action I learned that more than a dozen lenders had been contacted. In my experience this causes confusion in the market and made Global's job harder.

19. On July 23, 2010, I unexpectedly received an email from Donald Stukes informing me that NAC was terminating its Agreement with Global. I tried to discuss any accommodations with NAC but they did not answer my calls or communicate directly with me to discuss what occurred and the reason for the termination.

20. In the summer of 2010 I contemplated joining a newly formed aircraft finance venture called Pearl Aviation but ultimately declined a lucrative offer from

1  them. Never, in my discussions with NAC and Stukes was Pearl Aviation
2  discussed, and I never said that I was affiliated with Pearl. To my surprise, during
3  discovery in this action I learned that NAC executives and Stukes referred to Global
4  as "Pearl" during the negotiations of the Agreement.

6  I make this declaration under penalty of perjury under the laws of the United
7  States. Executed this 14th day of September 2012, in Camarillo, California.

    Jacob Hodges