**EXHIBIT 45**

# In The Matter Of:

## GLOBAL BTG, LLC
### v.
## NATIONAL AIR CARGO

## McFARLANE, KEVIN D. - Vol. 1
### August 17, 2012

**MERRILL CORPORATION**
LegaLink, Inc.
20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

EXHIBIT 45
Page 490

KEVIN D. McFARLANE - 8/17/2012

Page 121

```
 1   that may exist at one point and pricing that exists      01:41:10
 2   later on in -- later on in time.  So -- but I wasn't     01:41:13
 3   part of that -- I wasn't part of that transaction.       01:41:16
 4       Q.   Let me see if I can summarize your damages      01:41:18
 5   opinions in your main report.                            01:41:27
 6            Your first opinion is that there was a loss     01:41:29
 7   of the portion of the JAL deposit, and that was          01:41:32
 8   damage to National that was caused by Global; right?     01:41:35
 9       A.   Yes.                                            01:41:38
10       Q.   And second, there was an incremental            01:41:39
11   financing cost paid for the Air France aircraft deal     01:41:42
12   that would not have been paid had Global performed?      01:41:46
13       A.   Correct.                                        01:41:49
14       Q.   And that's the argument, that -- that the       01:41:50
15   price went up because Global wasn't able to get the      01:41:53
16   deal on the table that they had agreed to get?  Is       01:41:59
17   that the --                                              01:42:02
18       A.   Correct.                                        01:42:02
19       Q.   The third is that there was a loss of the       01:42:04
20   JAL transaction.  There was damage because they lost     01:42:07
21   the JAL aircraft and they lost the JAL -- strike it.     01:42:10
22            There is damage because they lost the JAL       01:42:16
23   aircraft?                                                01:42:19
24       A.   Correct.                                        01:42:19
25       Q.   And to calculate that, you determine how        01:42:20
```

Los Angeles - 800-826-0277            www.merrillcorp.com/law

EXHIBIT 45
Page 491

KEVIN D. McFARLANE - 8/17/2012

Page 122

| | | |
|---|---|---|
| 1 | much they would have profited over the lifecycle of | 01:42:25 |
| 2 | the aircraft if they had purchased it on market | 01:42:29 |
| 3 | terms? | 01:42:32 |
| 4 | A. Correct. | 01:42:33 |
| 5 | Q. So you used the 9 percent first tranche | 01:42:34 |
| 6 | rather than the terms that are in the Global BTG | 01:42:37 |
| 7 | LOI? | 01:42:47 |
| 8 | A. Correct. | 01:42:47 |
| 9 | Q. The next opinion is that there were losses | 01:42:50 |
| 10 | due to economies of scale that impact the Air France | 01:42:53 |
| 11 | aircraft; is that right? | 01:42:57 |
| 12 | A. Correct. | 01:42:58 |
| 13 | Q. And that's the argument, that the Air | 01:42:58 |
| 14 | France aircraft were unable to be deployed as | 01:43:01 |
| 15 | profitably as they could have been deployed had | 01:43:03 |
| 16 | they -- had National purchased all eight? | 01:43:06 |
| 17 | A. Correct. | 01:43:09 |
| 18 | Q. Any other -- any other damages that -- any | 01:43:13 |
| 19 | other damages opinions that I am missing? | 01:43:17 |
| 20 | A. Those were the four that I cited in the | 01:43:19 |
| 21 | report. | 01:43:22 |
| 22 | Q. And I was just -- before you got in, I was | 01:43:23 |
| 23 | swearing that I thought there was a reference that | 01:43:27 |
| 24 | the report was prepared consistent with AICPA | 01:43:29 |
| 25 | standards. | 01:43:32 |

KEVIN D. McFARLANE - 8/17/2012

Page 123

| | | | |
|---|---|---|---|
| 1 | | Does that ring a bell? | 01:43:33 |
| 2 | A. | Yes. | 01:43:34 |
| 3 | Q. | Is that correct? | 01:43:36 |
| 4 | A. | It was -- yes. | 01:43:37 |
| 5 | Q. | Tell me what the -- what role the AICPA has | 01:43:39 |
| 6 | in setting standards for the preparation of a report | | 01:43:46 |
| 7 | like this. | | 01:43:49 |
| 8 | A. | There are -- there are things that you do | 01:43:51 |
| 9 | with respect to how you think about comparables, how | | 01:43:52 |
| 10 | you think about -- you know, we have a secondary | | 01:43:56 |
| 11 | reviewer, for example. We have -- in terms of the | | 01:44:01 |
| 12 | due care that you must take as a professional. So | | 01:44:05 |
| 13 | we have somebody go back and -- and test the model, | | 01:44:09 |
| 14 | just to make sure there are no errors. That doesn't | | 01:44:13 |
| 15 | mean that they can't be, but -- but it's -- it's -- | | 01:44:17 |
| 16 | a lot of it has to do with the care and | | 01:44:21 |
| 17 | responsibility that you have under those standards. | | 01:44:25 |
| 18 | Q. | Do you perform all of your professional | 01:44:30 |
| 19 | work in accordance with AICPA standards when they | | 01:44:34 |
| 20 | apply? | | 01:44:38 |
| 21 | A. | I'm sorry. | 01:44:43 |
| 22 | Q. | Do you perform all your professional work | 01:44:43 |
| 23 | in accordance with the AICPA standards? | | 01:44:46 |
| 24 | | MR. RICHMOND: I will object to the extent | 01:44:46 |
| 25 | the question seems extraordinarily broad. | | 01:44:49 |

KEVIN D. McFARLANE - 8/17/2012

Page 124

| | | |
|---|---|---|
| 1 | But go ahead. | 01:44:52 |
| 2 | THE WITNESS: Yeah. I -- I -- we -- what I | 01:44:53 |
| 3 | would say is that we -- we try to adhere to the -- | 01:44:54 |
| 4 | to professional standards. And if -- and if AICPA | 01:44:58 |
| 5 | applies, particularly with respect to where we are | 01:45:03 |
| 6 | signing something, by either Kevin McFarlane or | 01:45:06 |
| 7 | Deloitte, yes. We would -- if -- if those rule sets | 01:45:11 |
| 8 | apply, then we would seek to perform to that | 01:45:14 |
| 9 | standard. | 01:45:17 |
| 10 | BY MR. SMITH: | 01:45:18 |
| 11 | Q. And if a subordinate of yours provided you | 01:45:19 |
| 12 | with work and was not -- the work was not in accord | 01:45:25 |
| 13 | with AICPA standards, would you consider that work | 01:45:29 |
| 14 | consistent with the degree of professionalism and | 01:45:35 |
| 15 | expertise that's required of a Deloitte employee? | 01:45:38 |
| 16 | MR. RICHMOND: I will object because that | 01:45:41 |
| 17 | is extraordinarily broad again. But -- and even | 01:45:42 |
| 18 | vague because it's not tied to this case. | 01:45:45 |
| 19 | But go ahead if you can answer. | 01:45:48 |
| 20 | THE WITNESS: Repeat the question, please. | 01:45:54 |
| 21 | BY MR. SMITH: | 01:45:54 |
| 22 | Q. If a subordinate of yours provided you with | 01:45:55 |
| 23 | work that was not in accordance with AICPA | 01:45:58 |
| 24 | standards, would you consider that work to be | 01:46:01 |
| 25 | consistent with the degree of professionalism and | 01:46:02 |

KEVIN D. McFARLANE - 8/17/2012
Page 125

| | | |
|---|---|---|
| 1 | expertise that is required of a Deloitte employee? | 01:46:05 |
| 2 | MR. RICHMOND: Same objection. | 01:46:07 |
| 3 | THE WITNESS: I -- that's a standard that | 01:46:10 |
| 4 | we strive to. I think that -- has -- can I sit here | 01:46:13 |
| 5 | and say there has never been a piece of Deloitte | 01:46:19 |
| 6 | work that -- that hasn't between -- that's met every | 01:46:22 |
| 7 | standard or every -- every letter of the AICP | 01:46:26 |
| 8 | standard? No, I can't sit here and say that. But | 01:46:28 |
| 9 | that's what we strive -- that's what we strive to | 01:46:31 |
| 10 | do. And I think in striving to do that, we -- we | 01:46:33 |
| 11 | meet certainly the spirit, if not the standard of | 01:46:37 |
| 12 | those standards more often than not is, I guess, how | 01:46:39 |
| 13 | I'd answer the question. | 01:46:42 |
| 14 | BY MR. SMITH: | 01:46:43 |
| 15 | Q. And one of the documents that -- that you | 01:46:44 |
| 16 | provided to us in the production yesterday is an | 01:46:46 |
| 17 | AICPA publication on calculating lost profits. | 01:46:49 |
| 18 | You remember that? | 01:46:52 |
| 19 | A. Uh-huh. | 01:46:53 |
| 20 | Q. How did you -- what role did that | 01:46:54 |
| 21 | publication have in the preparation of your report, | 01:46:56 |
| 22 | your main report? | 01:47:00 |
| 23 | A. That -- that's what we use in order to -- | 01:47:02 |
| 24 | for our secondary reviewer to -- to make sure that | 01:47:06 |
| 25 | that's -- that we have at least tried to -- to live | 01:47:09 |

KEVIN D. McFARLANE - 8/17/2012

Page 249

```
 1                       DECLARATION
 2
 3
 4
 5         I hereby declare I am the deponent in the
 6    within matter; that I have read the foregoing deposition
 7    and know the contents thereof; and I declare that the
 8    same is true of my knowledge except as to the matters
 9    which are therein stated upon my information or belief,
10    and as to those matters, I believe it to be true.
11         I declare under the penalties of perjury under
12    the law of the State of California that the foregoing is
13    true and correct.
14         This declaration is executed this _____ day
15    of _____, 20___, at _____,
16    California.
17
18
19
20
21
22                                    _____
23                                    KEVIN D. MCFARLANE
24
25
```

Merrill Corporation - Los Angeles
Los Angeles - 800-826-0277        www.merrillcorp.com/law

EXHIBIT 45
Page 496

KEVIN D. McFARLANE - 8/17/2012

1  STATE OF CALIFORNIA    )
2                         ) ss.
3  COUNTY OF LOS ANGELES  )
4
5      I, Xavier Mireles, CSR No. 5001 in and for the State
6  of California, do hereby certify:
7      That, prior to being examined, the witness named in
8  the foregoing deposition was by me placed under oath to
9  testify to the truth, the whole truth, and nothing but
10 the truth;
11     That said deposition was recorded stenographically
12 by me at the time and place therein named and thereafter
13 transcribed, and the same is a true, correct, and
14 complete transcript of said proceedings.
15     Before completion of the deposition, review of the
16 transcript [ ] was [X] was not requested.  If requested,
17 any changes made by the deponent (and provided to the
18 reporter) during the period allowed are appended hereto.
19     I further certify that I am not interested in the
20 event of this action.
21     WITNESS MY HAND this _____ day of _____,
22 2012.
23
24                    _____
25                    XAVIER MIRELES, CSR No. 5001

Merrill  Corporation  -  Los Angeles
Los Angeles - 800-826-0277         www.merrillcorp.com/law

EXHIBIT 45
Page 497

**EXHIBIT 46**

# FILED UNDER SEAL PURSUANT TO PROTECIVE ORDER

**EXHIBIT 47**

# FILED UNDER SEAL PURSUANT TO PROTECIVE ORDER